UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LAWRENCE FELTZIN,

                            Plaintiff,          **MEMORANDUM AND ORDER**
                                                               2:16-cv-4329 (DRH)(AYS)

   - against –

CLOCKTOWER PLAZA PROPERTIES, LTD.,[1]
a New York Corporation,

                            Defendant.
-------------------------------------------------------X

**APPEARANCES**

**BRAFF, HARRIS, SUKONECK, & MALOOF**
Attorney for Plaintiff
305 Broadway
New York, NY 10007
By:    Keith Harris, Esq.

**FULLER, FULLER & ASSOCIATES, P.A.**
Attorney for Plaintiff
1200 Biscayne Blvd. Ste. 609
North Miami, FL 33181
By:    Lawrence A. Fuller, Esq.

**ALLISON M. KOURBAGE, P.C.**
Attorney for Defendant
1 Schwab Rd. Ste. 7
Melville, NY 11747
By:    Allison M. Kourbage, Esq.

---

[1] Plaintiff, in the caption to the Second Amended Complaint and in the caption to his papers in opposition to the relief sought by Defendant, uses the term "Clocktower" when referring to Defendant. Accordingly, the Court has done the same throughout this decision—except for quoted materials—even though in the text of the Second Amended Complaint and elsewhere Plaintiff references the subject property via two words, to wit "Clock Tower."

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Lawrence Feltzin ("Plaintiff") brought the instant action against Defendant Clocktower Plaza Properties, Ltd. ("Defendant") for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. Plaintiff qualifies as an individual with disabilities as defined by the ADA, and uses a wheelchair. (Second Amended Complaint [DE 33] ¶ 5 (Apr. 12, 2017) (hereinafter "SAC")); 42 U.S.C. § 12102. Plaintiff alleges in the SAC that Defendant violated the ADA by denying him access to, and full and equal enjoyment of, certain goods and facilities including the parking area, restroom, and certain restaurant premises, thereby discriminating against him and forcing him to suffer humiliation and embarrassment. (SAC ¶ 6.)

Presently before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Rule 12(b)(7) for failure to join necessary parties under Rule 19. (Mem. in Supp. [DE 35-1] at 4–17 (hereinafter "Mem. in Supp.").) For the reasons set forth below, the motion to dismiss is granted as to Rule 12(b)(1) and 12(b)(6), and denied as to Rule 12(b)(7).

## BACKGROUND

The following facts come from the Parties' submissions and the Complaint.

Plaintiff alleges that at the time of commencement of this action he resided in Boynton Beach, Florida, but previously lived in Nassau County, New York and travels back to Nassau frequently to visit his friends. (SAC ¶ 6.) Plaintiff states that he visited the Defendant's property the Clocktower Plaza, a shopping center at 1 Schwab Road, Melville, NY 11747 (the

"Property"), on May 11, 2016 to get a slice of pizza. (Feltzin Aff. [DE 36-1] ¶ 2 (June 2, 2017). Plaintiff alleges that he encountered architectural barriers that impaired his "ability to park safely at the premises, to access the premises safely, to use restrooms safely, and to access goods and services at the premises." (SAC ¶ 6.) Plaintiff states that he intends to return to the Property once the barriers to access are corrected. (*Id.* ¶ 7.)

Plaintiff alleged ADA violations in three overarching categories: (1) parking, (2) goods and services, and (3) restrooms. (SAC ¶ 11.) Regarding parking, Plaintiff specifically claims that the curb ramps are unsafe for wheelchair use; that the parking spaces fail to lead to ramps; that there is no safe accessible route to the bus stop, street, or sidewalk. (*Id.*) Regarding access to goods and services, Plaintiff claims that Mario's Pizzeria and other restaurants fail to provide accessible tables; that payment counters at numerous retailers including Ralph's Ice are mounted out of reach; and that there are abrupt changes of level or slopes. (*Id.*) Regarding the restrooms, Plaintiff claims that the facilities at Mario's Pizzeria and Nail Castle are unsafe due to small, inaccessible bathrooms; that they lack knee clearance; that they contain improper centerlines; and that all the restrooms include improper door hardware, a lack of maneuvering space, and dispensers that are out of reach. (*Id.*)

On August 2, 2016, Plaintiff brought the instant action. Defendant answered on September 28, 2016, and Plaintiff filed his First Amended Complaint on October 13, 2016. Defendant then filed a letter application for a pre-motion conference for a motion to dismiss on January 2, 2017. Plaintiff then moved to file a SAC on January 5, 2017. The Court granted Plaintiff's motion and Plaintiff filed the SAC on April 12, 2017. Defendant filed the instant motion to dismiss on June 22, 2017.[2]

---

[2] On October 26, 2017, Plaintiff filed a supplement to his response to Defendant's motion asking the Court to follow a recent decision in *Feltzin v. Ronkonkoma Shopping Center*, in which the Eastern

# DISCUSSION

## I.    ADA Generally

Title III of the ADA provides in relevant part that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. The Second Circuit has explained that the ADA's remedial goals include "eliminating widespread discrimination against the disabled and integrating the disabled into the mainstream of American life." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 189 (2d Cir. 2013).

In order to state a claim under the ADA, Plaintiff must allege (1) that he is disabled within the meaning of the ADA; (2) that Defendant owns, leases, or operates a place of public accommodation; and (3) that Defendant discriminated against him by denying him a full and equal opportunity to enjoy the services at the Property. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008); *see also Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198–99 (S.D.N.Y. 2016). And a party, like Plaintiff, seeking injunctive and declaratory relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyon*, 461 U.S. 95, 105–06 (1983)).

---

District of New York denied a motion for judgment on the pleadings pursuant to Rule 12(c) in which the sole issue was "whether Plaintiff had adequately pleaded an 'intent to return' to the Property sufficient to confer the requisite standing[.]" *Feltzin v. Ronkonkoma Shopping Center*, No. 16 CV 5296, at 11 (Oct. 18, 2017). That decision has been considered by the Court in deciding the instant matter.

**II.     The Motion to Dismiss is Granted Without Prejudice**

   A. Rule 12(b)(1)

      i.     Legal Standard

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

      ii.    The Motion to Dismiss Pursuant to Rule 12(b)(1) is Granted

In the instant motion to dismiss, Defendant claims that Plaintiff lacks standing to bring the action because (1) he failed to allege that he personally encountered the architectural barriers, (2) he failed to allege that he intends to return to the Property, and (3) he is unlikely to return to the Property. (Mem. in Supp. at 5–12.)

In actions brought under the ADA, the Second Circuit has "found standing where a plaintiff (1) alleges past injury under the ADA, (2) shows that it is reasonable to infer from his or her complaint that the discriminatory treatment will continue, and (3) shows that it is reasonable

to infer that he or she 'intend[s] to return to [the public accommodation].'" *Harty v Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2d Cir. 2013) (Summary Order) (quoting *Kreisler*, 731 F.3d at 187–88). In reviewing standing under the ADA, "'a broad view of constitutional standing' is appropriate because 'private enforcement suits are the primary method of obtaining compliance with the Act.'" *Rosa*, 175 F. Supp. 3d at 199 (quoting *Baker v. New York State Dep't of Envtl. Conservation*, No. 10 CV 1016, 2012 WL 2374699, at *2 (N.D.N.Y. 2012)). However, even an ADA "tester"—an individual who seeks out businesses that violate the ADA in order to bring suit—are still subject to the same standing requirements as any other litigant. *See Harty v. Simon Prop. Grp.L.P.*, 428 F. App'x 69, 71–72 (2d Cir. 2011); *see also Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15 CV 5432, 2016 WL 6901314, at *5 (S.D.N.Y. Nov. 18, 2016) ("Although the ADA generously confers the right to be free from disability-based discrimination, Congress cannot abrogate the Art. III minima: A plaintiff must always have suffered a distinct and palpable injury to himself[.]") (internal quotations and citations omitted).

An injury under the ADA can take the form of a "direct injury from personally encountering disability-based discrimination at Defendant's property" or, alternatively, "deterrence from using Defendant's property because it is not ADA compliant." *Shariff v. Kim's Rainbow Cleaners, Inc.*, No. 11 CV 1496, 2013 WL 5519970, at *2 (E.D.N.Y. Sept 30, 20113) (quoting *Access 4 All, Inc., v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 173 (S.D.N.Y. 2006). Here, Plaintiff seems to allege both direct and deterrent injuries, based on the language in the SAC and his affidavit.[3] (*See* SAC ¶ 6.) A plaintiff can establish a direct injury

---

[3] Despite amending the original Complaint, twice, Plaintiff's arguments are difficult to follow and do not all align with his statements in the Affidavit. For example, the SAC and its predecessors seem to intentionally omit the date of Plaintiff's visit to the Property, whereas Plaintiff's Affidavit states that he personally went to the Property on May 11, 2016. (Feltzin Aff. ¶ 2.) The SAC also fails to allege a direct injury to Plaintiff regarding certain claims, such as the payment counter heights, but the Affidavit makes out a deterrence injury regarding the counters. (*See* SAC ¶ 11; Feltzin Aff. ¶ 6.)

sufficient to support standing only if the plaintiff "personally encounters the barrier to access" that caused the plaintiff's injury. *Panzica v. Mas-Maz, Inc.*, No. 05 CV 2595, 2007 WL 1732123, at *3 (E.D.N.Y. June 11, 2007)

In asserting claims under Title III of the ADA, Plaintiff must allege that he suffered an injury that is both "concrete and particular" and "actual or imminent, not conjectural or hypothetical." *Shariff* 2013 WL 5519970, at *2 (quoting *City of Los Angeles v. Lyons*, 491 U.S. 95, 102 (1983)). In the case at bar, Plaintiff does allege the bare minimum to make out prima facie injury on several counts, but fails on others. The claims on which he succeeds are as follows:

- The condition of curb ramps abruptly changing levels "made it unsafe for Mr. Feltzin to get around the premises in his wheelchair." (SAC ¶ 11(b) at 4.)

- "The exterior accessible route from parking spaces" at the Property failed to lead to ramps "and prevented Mr. Feltzin from maneuvering in his wheelchair around" the Property. (*Id.* ¶ 11(c) at 4.)

- Tenant spaces at the Property had abrupt changes of level "and impeded free access by Mr. Feltzin into and around the premises." (*Id.* ¶ 11(c) at 4.)

- Mr. Feltzin was unable to use the restrooms safely due to a lack of accessibility throughout the Property, including at Mario's Pizzeria and Nail Castle. (*Id.* ¶ 11(a) at 4.)

- The restrooms at Mario's Pizzeria and Nail Castle had improper centerlines and flush controls "hindering Mr. Feltzin's safe use of the restrooms." (*Id.* ¶ 11(d) at 5.)

- When Plaintiff "entered restrooms throughout the [Property] including Mario's, he was impeded by improper door hardware and a lack of maneuvering space to enter[.]" (*Id.* ¶ 11(e) at 5.)

- There were no accessible tables at Mario's Pizzeria so Plaintiff was not able to eat at the restaurant after buying his pizza. (Feltzin Aff. ¶ 5.)

- The height of the payment counters were too tall for Plaintiff to access and deterred him from ordering desert therefrom. (*Id.* ¶ 6.)

- "The dispensers at Marios Pizzeria and Nail Castle Restrooms were mounted too high and were not reachable by [Plaintiff] from [Plaintiff's] seated position." (*Id.* ¶ 9.)

- The sinks in the restrooms at both Mario's Pizzeria and Nail Castle lacked proper knee clearance so Plaintiff was unable to wash his hands. (*Id.* ¶ 10.)

The foregoing claims are pled with particularity as to Plaintiff, as Plaintiff has alleged a past, direct injury that happened to him. (*See id.*)

There are also several other claims that do not meet the minimum threshold for standing even when supplemented by statements in Plaintiff's Affidavit, because the SAC fails to allege that the issue caused a direct injury to Plaintiff personally. They are as follows:

- "Parking spaces throughout Clock Tower Plaza are not maintained; lack compliant access aisles, contain slopes and abrupt changes of level within the spaces, violating Sections 502 and 502.4 of the 2010 Accessibility Standards. These conditions prevent Mr. Feltzin and those in wheelchairs to unload from their vehicles freely and safely." (*Id.* ¶ 11(a) at 3–4.)

- "Clock Tower Plaza fails to provide Mr. Feltzin and others in wheelchairs a safe accessible route to the adjacent bus stop, street or sidewalk, violating Section 206.2.1 of the 2010 Accessibility Standards." (*Id.* ¶ 11(d) at 4.)

- "Payment counters throughout Clock Tower Plaza including Ralph's Ice are mounted beyond the reach of Mr. Feltzin and others in wheelchairs, violating Sections 308 and 904 of the 2010 Accessibility Standards." (*Id.* ¶ 11(b) at 4.)[4]

Regarding the foregoing claims, the SAC does not state that the Plaintiff was in fact injured. The alleged injury is hypothetical as opposed to actual, because Plaintiff does not claim that he was personally prevented or deterred from getting to the bus or making a payment at some unnamed business at the Property. Even though standing may be construed liberally for ADA claims, Plaintiff must meet the requirements of a concrete and particular injury. *See Harty*, 428 F. App'x at 71–72; *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 (9th Cir. 2011) (finding that plaintiff lacked standing where his complaint "does nothing more than

---

[4] Pursuant to Plaintiff's Affidavit, the allegation regarding Ralph's Ice is properly pled, but not regarding any other unnamed businesses "throughout" the Property. (*See* Feltzin Aff. ¶ 6.)

perform a wholesale audit of the defendant's premises" without alleging personal encounters with the violation) (internal quotations omitted).  Thus, Plaintiff has met the first element of the standing test for most of his allegations, but not for the aforementioned four.

Under the second element of the *Kreisler* test for standing under the ADA, the question is whether it is reasonable to infer that the discrimination will continue.  *Kreisler*, 731 F.3d 187–88.  The Court finds that Plaintiff has sufficiently alleged that the discrimination will continue.  The SAC states "Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant."  (SAC ¶ 9.)  The SAC also elaborates that

> Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

(*Id.* ¶ 14.)  While Plaintiff does not provide any reasons for his "reasonable grounds to believe" that the discrimination will continue, he does make the interesting point in his Affidavit that "rather than recognize the problems that I (and other handicapped persons) experience at the property, and attempt to make modifications to make the property accessible, the Defendant has instead chosen to contest the requirement that they do so." (Feltzin Aff. ¶ 21.)  In this vein, it does not seem like a stretch to infer that the discrimination will continue as Defendant has brought this motion to dismiss, which never once expresses any desire to remedy the architectural barriers over which Defendant clearly has control (such as the parking areas).  Therefore, this second element of the *Kreisler* test for standing is met.

The final element under the *Kreisler* test is whether it is reasonable to infer that Plaintiff intends to return to the Property.  *Kreisler*, 731 F.3d at 187–88.  "Intent to return is a highly fact-

sensitive inquiry that incorporates a range of factors including not only the proximity of the defendant's services, program, or activities to the plaintiff's home and the frequency of the plaintiff's past visits, but also other factors relevant to the calculation of the plaintiff's intent to return such as occupation or demonstrated travel habits." *Bernstein v. City of New York*, 621 Fed. App'x 56, 59 (2d Cir. 2015). No single factor is dispositive, so courts have found standing even for plaintiffs who live a long distance from the property in question. *See Spring Valley Marketplace LLC*, No. 15 CV 8190, 2017 WL 108062, at *5 (S.D.N.Y. Jan. 9, 2017) (noting that the fact that plaintiff's permanent residence was in Florida and the property in question was in Rockland New York was not dispositive of standing).

Plaintiff claims in both the SAC and his Affidavit that he intends to return to the Property on one of his trips to New York. (*See* Aff. ¶ 20 ("I do specifically intend to return to the property to eat there on one or more of my next trips once the property is made accessible, and . . . expect such visit would take place within 90 days of learning that the property has been made accessible."); SAC ¶ 7 ("Mr. Feltzin plans to return to the property once the barriers to access are corrected and the facility becomes fully accessible[.]").) The wrinkle here is whether it is *reasonable* to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future given that he has never been there before, he does not live in the area, he does not allege that he frequently travels to the specific area, and he has filed more than eighty ADA cases in the Eastern District of New York in the last three and a half years. (*See* Def.'s Reply Mem. [DE 37] at 11 (June 2, 2017) (hereinafter "Reply Mem.").)

The Second Circuit considered a similar set of facts in *Harty*, and held that there was insufficient evidence of a concrete plan for plaintiff to return to the property in question in the future. 536 F. App'x. 154. In *Harty*, the plaintiff was a Florida resident who claimed that he

often visited his family in Nyack, New York, a short distance from a hotel in Stamford, Connecticut. *Id.* The plaintiff had made dozens of trips to Nyack over the prior thirty years, but had only stayed at the hotel in question on one occasion (the occasion giving rise to the cause of action). *Id.* Despite the plaintiff's contention that he frequently visited Connecticut as part of his travels to New York, the Second Circuit found that the plaintiff was not likely to return as he had never been before, he had no concrete plans to go back, and the property was far from where he lived. *Id.* The Second Circuit affirmed the District Court's granting of a motion to dismiss. *Id.*

Here, Plaintiff also lives in Florida and alleges that he travel to New York to visit family multiple times a year. (SAC ¶ 5–6.) He says that he has "friends and family that live in Nassau County, and I plan trips to New York regularly several times per year to visit them." (Feltzin Aff. ¶ 17.) Notably, the Property is in Melville in Suffolk County, which is near but certainly not in Nassau County. Plaintiff does not claim that he has friends or family in Melville, or that he frequents either Melville or the broader Suffolk County.

In these regular trips to New York over the last however many years, Plaintiff has only been to this Property on one occasion; namely, the occasion leading to this action. (*See* Feltzin Aff. ¶ 2.) Plaintiff creatively tries to avoid giving concrete plans by stating in his Affidavit that "I do not plan months in advance when I will frequent one of these malls . . . as these are not the types of restaurants that require reservations 6 months in advance." (SAC ¶ 19.) However, this statement does not give the Court sufficient assurance that he will in fact return to the Property once the Property is ADA compliant or otherwise. *Compare James Van Winkle v. Kings Mall Court LLC*, No. 16 CV 325, 2018 WL 679466, at * 2 (N.D.N.Y. Feb. 1, 2018) (citing *Harty*, 536 F. App'x at 155) ("Given [plaintiff's] relative remoteness from Kings Mall, it is unreasonable to infer that [plaintiff] intends to return to the subject location.") *with Harty v. Spring Valley*

*Marketplace LLC*, No. 15 CV 8190, 2017 WL 108062, at *8–9 (S.D.N.Y. Jan. 9, 2017) ("Based on Plaintiff's history of travel to Rockland, New York, his alleged plans to continue to return to the Marketplace, and the dates he has proffered on when he exactly plans to return, it is reasonable to infer at this stage that Plaintiff intends to return to the Marketplace" and explaining that "Plaintiff's allegation to return in June of July 2016 constitutes more than a vague 'some day' intention to return.").

Here, as the record now stands, there is no more than a vague "some day" intention to return at an unspecified time in the future on an unspecified trip, with no history of ever having been to the Property on another occasion besides May 11, 2016. *See Deutsch v. Travis County Shoe Hosp., Inc.*, No 16 CV 51431, 2018 WL 704131, at *3 (5th Cir. Feb. 2, 2018) (affirming the relevant part of the district court's dismissal of an ADA Title III action and explaining that the plaintiff "has not provided a description of any concrete plans to return to Travis County shoe, and . . . [plaintiff] testified at the hearing that he had not been to Travis County Shoe before the day he alleged he encountered the ADA violations [and] . . . that he had not returned to the business since that day.") Although Plaintiff states that he will return within 90 days of learning that the Property has become compliant with the ADA, that still seems like nothing more than a vague "some day" intention as it could take Defendant years to update the Property and Plaintiff's circumstances could change significantly in that time. (*See* Feltzin Aff. ¶ 20.) It does not matter that this is not the type of establishment that requires a reservation because Plaintiff has not even told the Court when he next intends to travel back to Nassau County for any reason, no less to Melville in the neighboring community. Thus, it is not reasonable for the Court to infer that Plaintiff will return to the Property on the information provided. As such, Plaintiff has failed to meet the requirements for standing pursuant to *Kreisler* for any of his claims, and

Defendant's motion to dismiss pursuant to Rule 12(b)(1) is granted. By dismissing the case pursuant to Rule 12(b)(1) and finding that the Court lacks subject matter jurisdiction, Defendant's Rule 12(b)(6) and Rule 12(b)(7) motions are rendered academic and will not be addressed.

**CONCLUSION**

Parenthetically the Court questions whether this lawsuit is part of a plan by Plaintiff to visit a host of shopping centers for the purpose of discovering ADA violations, commencing suits when deemed appropriate, and then settling most absent any intent to revisit the sites of non-settling defendants. While such a plan would be beneficial in the sense it would advance ADA compliance, it is fundamentally at odds with the declaratory and injunctive relief sought by Plaintiff. *Deshawn E. v. Safir*, 156 F.3d at 344. Those causes of action necessitate a prospective injury traceable, in an ADA case, to a future visit.

In any event, there are too many gaps and unanswered questions to permit the Court to conclude that Plaintiff has met his burden of showing that the Court has subject matter jurisdiction. Indeed, he seems uncertain as to the county in which the Property is located. (*See* SAC ¶ 2 ("Clock Tower Plaza . . . is located [in the] County of Suffolk, in the County of Nassau.").) And with respect to unanswered questions, e.g., when did Plaintiff relocate from Nassau County to Florida and where did he live in Nassau—near Suffolk or closer to Queens? How many friends and relatives "still live in Nassau County" that Plaintiff has visited, say in the last three years? (Feltzin Aff., ¶ 17.) What are their names and addresses and what was the length of the visit or visits? When did the family members whom Plaintiff previously reported in a similar ADA case of his leave Manhattan and move to Nassau? (*See* Ex. M, ¶ 4(b), to Def.'s June 22, 2017 Reply Decl., which references the April 7, 2016 Aff. of Lawrence Feltzin filed in Case No. 2:14-CV-05131-JMA-ARL in *Lawrence Feltzin v. Triangle Properties # 1, LLC* in

which Plaintiff avers: "The family members [that I travel to] New York to visit include my sister, niece and brother-in-law who live in Manhattan . . . .") In the present case, is Plaintiff referring to other relatives? How close are the sites in Nassau that Plaintiff visits to the Property, measured in either approximate distances or travel times?

The stores visited by Plaintiff on May 11, 2016 seem to offer readily available fare, such as pizza; are there other establishments offering like goods and services considerably closer to where Plaintiff was staying in Nassau on the occasion or occasions he visited friends or family in that County? Cf. *Pincus v. National R.R. Passenger Corp.*, 581 Fed. Appx. 88, 90 (2d Cir. 2014) (Summary Order) (Circuit, in vacating a district court's dismissal of a complaint under Rule 12(b)(1), explained that "[h]ere, plaintiff is seeking future access not to one of many local restaurants, but to the only national railway system. Given Pincus's prior use of Amtrak, her residence in a city with an Amtrak station, and the distinct and widespread nature of Amtrak's services in providing access to intercity travel, it is reasonable to infer from the complaint that Pincus intends to patronize Amtrak again if the alleged violations are remedied.")

The answers to questions like those set forth in the paragraph above possibly–obviously, depending on the answers—might show that it is feasible to infer that Plaintiff will return to the Property consistent with his conclusory assertion to that effect.

Although Defendant's Rule 12(b)(1) motion is granted, the resulting dismissal is without prejudice. Should Plaintiff elect to pursue the matter further in an effort to remedy the shortcomings highlighted in this decision, he should so advise the Court and opposing counsel on or before April 13, 2018. In that event a hearing will be scheduled before the undersigned

approximately a month thereafter.  Otherwise the Clerk of Court will be directed to close the case as concluded.

**SO ORDERED.**

Dated: Central Islip, New York
February 28, 2018

                                                /s/
                                    Denis R. Hurley
                                    Unites States District Judge